UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DATHA MCCOY,

        Plaintiff,

                                  **Case No. 2:14-cv-2642**

      v.                            **JUDGE GREGORY L. FROST**
                                    **Magistrate Judge Terence P. Kemp**

MV RESIDENTIAL PROPERTY
MANAGEMENT, INC., et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (ECF No. 44),[1] Plaintiff's memorandum in opposition (ECF No. 46), and Defendant's reply memorandum (ECF No. 50). For the reasons that follow, the Court finds the motion well taken in regard to the federal claims and two analogous state claims, but declines to exercise jurisdiction over the remaining state law claims, which are remanded to the state court.

## I.      Background

In 2009, Plaintiff, Datha McCoy, began working for Defendant MV Residential Property Management, Inc. ("MVRPM"). Plaintiff was employed as a leasing specialist at a property complex named Scioto Woods, which MVRPM managed. In 2010, Plaintiff was then promoted to the position of community manager at Scioto Woods. In this management capacity, Plaintiff supervised various employees, including Defendant Thomas Yager, a part-time service

---

[1] Plaintiff also filed a "corrected" version of its summary judgment motion. (ECF No. 45-1.) The difference between the two versions appears to be the absence of highlighting on the table of contents in the corrected version and shifting some headings onto a subsequent page.

technician.  Plaintiff in turn was supervised by Defendant Rita Smith.

Plaintiff asserts that during her employment, Yager sexually harassed her.  To support this allegation, she initially points to three 2010 incidents.  According to Yager, she was sitting at her desk at Scioto Woods in the summer of 2010 when Yager entered, came around her desk, and attempted to massage her shoulders.  Plaintiff states that she pushed him off and that Yager walked away silently after being rebuffed.  Later that summer, according to Plaintiff, Yager allegedly came into Plaintiff's office and reached his arms out to hug her.  Plaintiff asserts that she stopped him and that Yager again left the office without speaking.  Finally, Plaintiff alleges that sometime later in 2010, Yager asked her whether she would like to go to lunch with him.  Plaintiff asserts that when she declined, Yager once again stood up and left her office without speaking.

Plaintiff did not discipline Yager for any of these alleged incidents.  Instead, Plaintiff reported the incidents to Smith.  In response, Smith interviewed Yager and another MVRPM employee who had observed how Yager interacted with Plaintiff.  Smith then met with Plaintiff, who indicated that she would stay away from Yager.  Plaintiff and Yager had almost no interaction during the rest of her time working at Scioto Woods.

The following year, in 2011, Plaintiff was transferred to the position of community manager at Kingston Mound Manor ("Kingston"), which is a senior living community managed by MVRPM.  Yager and his wife were residents at this new complex, but Yager did not work as an MVRPM employee at Kingston.  Sometime in the fall of 2012, Plaintiff alleges that, while sitting in her office, she saw Yager riding his bike outside on the sidewalk.  He allegedly stopped and watched her through the office window.  Plaintiff also asserts that on that same day she saw

2

the shadow of shoes under her office door and that she believed that Yager was standing outside the door.  Plaintiff did not report these allegations to Smith or any other MVRPM manager at that time.

During that same year, Plaintiff asserts, Yager then came into her office, pointed his finger at her, and told her that he did not know what was going on, but that she did not want to mess with him or that he would retaliate.  Plaintiff alleges that Yager then told her that he owned a gun and that he had a gun charge against him.  A witness to this incident indicated that Yager never mentioned a gun, and Plaintiff did not report the gun allegation to Smith.  Instead, Plaintiff reported the other details of the incident.  Smith referred the matter to MVRPM's human resources director, and these two individuals joined Plaintiff in a conference call about Plaintiff's allegations.  Plaintiff allegedly indicated during the call that  MYRPM could arrange for an agreement between her and Yager in which he would agree not to engage in inappropriate behavior toward her in the future.  Plaintiff and Yager eventually signed such an agreement in November 2012.

During these events following the transfer to Kingston, Plaintiff was allegedly experiencing difficulties in her position as community manager.  Reportedly, Smith had received an unusual number of complaints about Plaintiff as opposed to the number of complaints she normally received against other managers.  MVRPM had a resident satisfaction survey of Kingston residents conducted.  Following this survey, Smith decided in 2012 to transfer Plaintiff to another complex managed by MVRPM named Bridge Street Landing.  Plaintiff's salary remained the same, and her bonus plan at least equaled the bonus plan for Kingston.

Finally, Plaintiff contends that in the summer of 2013, Yager attended an eviction hearing

3

at which she was present.  Plaintiff asserts that she heard Yager tell someone that she was scared. She did not interact with Yager that day.

Plaintiff eventually resigned her employment with MVRPM.  She asserts that this was a wrongful and constructive discharge.  After obtaining a right to sue letter from the Equal Employment Opportunity Commission, Plaintiff then filed the instant action in the Pickaway County Common Pleas Court on November 18, 2014.  (ECF No. 5.)  Defendants subsequently removed the action to this Court in December 2014.  (ECF No. 1.)  In an eight-count complaint, Plaintiff asserts sexual harassment/hostile work environment in violation of Ohio Revised Code § 4112 *et seq.* (Count I); retaliation in violation of Ohio Revised Code § 4112 *et seq.* (Count II); sexual harassment/hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Count III); retaliation  in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count IV); intentional infliction of emotional distress (Count V); negligent supervision (Count VI); defamation (Count VII); and wrongful termination (Count VIII).  (ECF No. 5 ¶¶ 20-92.)  Defendants have filed a motion for summary judgment on all the claims.  (ECF No. 44.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II.      Discussion

### A.  Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.

4

*See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B.  Analysis**

*1.  Sexual harassment/hostile work environment claims*

In Count I of the complaint, Plaintiff asserts a state law claim for sexual harassment under Ohio Revised Code § 4112 *et seq.*  Plaintiff then asserts in Count III a federal claim for sexual harassment under Title VII, which provides that

> [i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

42 U.S.C. §§ 2000e-2(a)(1)-(a)(2).  Because the Sixth Circuit has recognized that the standards applicable to Title VII and Ohio Revised Code § 4112 claims are the same, the Court shall address these claims together.  *Laderach v. U–Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2000) (citing *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164, 1167 (1991)).

A threshold matter is what claims are properly before this Court.[2]  The parties disagree whether Plaintiff's 2010 allegations are time-barred and whether they can be considered with her 2012 allegations involved in the hostile work environment sexual harassment claim.  Three comments are warranted.

First, to the extent that Plaintiff seeks to assert a sexual harassment claim in regard to the 2010 allegations, this Court agrees that Plaintiff has failed to assert a timely claim.  *See Newsom v. Bd. of Educ. of Xenia City Sch. Dist.*, 59 F. App'x 716, 718 (6th Cir. 2003); *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).  Any attempt to retain these 2010 acts as separately viable runs counter to the controlling law; the hostile work environment claim does not salvage the 2010 acts so that they can present a distinct claim.

Second, a sexual harassment claim for Yager's 2012 interactions with Plaintiff also fails to evade summary judgment.  There is a dearth of evidence suggesting that Yager's purported 2012 conduct toward Plaintiff was directed at her because of her sex.

---

[2]  The Court notes that Plaintiff often uses "Defendants" in asserting or discussing her claims, regardless of the fact that some of the claims can only exist as to select defendants.

6

Third, the Court need not and does not resolve the moot dispute over whether to consider the 2010 allegations as part of the hostile work environment claims.  Even assuming for the sake of argument that the 2010 allegations are viable and relevant to those claims, Plaintiff's hostile work environment claims still fail on the merits as discussed below.

Defendants argue that they are entitled to summary judgment on Plaintiff's sexual harassment/hostile work environment claims because Plaintiff cannot establish a *prima facie* case.  In order to establish a *prima facie* case for a hostile work environment claim, Plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome discriminatory harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable.  *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014).  Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish multiple elements of her claims.

Even assuming *arguendo* that Plaintiff can satisfy the first three prongs of a *prima facie* case, Plaintiff's claims still fail.  She cannot establish the fourth prong, that a hostile work environment existed, or the fifth prong, that employer liability exists.

The Sixth Circuit has explained that a hostile work environment exists where

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .  Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

7

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003)  (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted).  Defendants argue that the purported "harassment" of which Plaintiff complains was not severe and pervasive enough.  This Court agrees.

The touchstone of a hostile work environment claim is proof that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "  *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  There is both an objective and a subjective prong to this standard.  In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive."  *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21–22).  Consequently, the question before the Court is whether a reasonable person would have found Plaintiff's work environment to be hostile or abusive.

In answering this question, the Court must consider various factors including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  Although the work environment as a whole must be viewed by the Court, including all alleged acts of harassment or abuse, if such acts are irregular and sporadic rather than continuous and frequent, it is much more difficult to prove a hostile work environment claim.  *See id.*  This is because "not all workplace conduct that

8

may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB*, 477 U.S. at 67.  For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

Necessarily construing all of the evidence in a light most favorable to Plaintiff, the Court concludes that the conduct complained of does not rise to the level of harassing or discriminatory conduct presenting a hostile work environment.  Taking all of Plaintiff's allegations into account, *over the course of years* Yager tried to give Plaintiff a massage once, tried to hug her once, asked her out to lunch once, looked at her through a window once, possibly stood outside her office door once, told her not to mess with him (and maybe threatened that he owned a gun), and then described her as scared to another individual during an eviction proceeding.  These incidents are so discrete and are so lacking in severity that they cannot be regarded under the totality of the circumstances as permeating the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to affect Plaintiff as she claims to have been affected. Although Plaintiff may have indeed been subjectively upset, her subjective perspective is insufficient to salvage her claims.

In another hostile work environment case, this Court explained why subjective perceptions of minor events fail to sustain a hostile work environment claim:

> This is not to say that Plaintiff was without any amount of cause to find the manner in which he was at times treated or the manner in which other employees interacted with him upsetting.  But upsetting does not always equal unlawful.  Plaintiff must recognize that Title VII does not exist to ensure that everyone who works together enjoys one another's company or personality.  Title

VII is simply not a general civility code. *See Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' "). *See also Black*, 104 F.3d at 826 ("Title VII was 'not designed to purge the workplace of vulgarity' " (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995))). Thus, the relatively meager instances of discourtesy or rudeness involved here cannot be confused with serious harassment or discrimination premised upon impermissible grounds such as gender. *See Faragher*, 524 U.S. at 787. While not excusing the treatment or behavior reflected in the evidence, the Court must nonetheless recognize that the instances of asserted impropriety do not amount to discriminatory changes in the terms and conditions of Plaintiff's employment. *See id.* at 788. There is simply no basis for linking any of the treatment about which Plaintiff complains to gender, and none of this conduct was severe and pervasive.

*Lott v. Havar, Inc.*, No. 2:12-cv-608, 2013 WL 2468351, at *8 (S.D. Ohio June 7, 2013). The same rationale applies here.

If Plaintiff's factual assertions are correct, Yager at worst engaged in boorish behavior toward her. This conduct falls far short from the more offensive conduct that failed to rise to the level of serve or pervasive conduct in *Rayford v. Illinois Central Railroad*, 489 F. App'x 1 (6th Cir. 2012). In that case, a plaintiff asserted that a supervisor had made a sexually inappropriate comment to him and that three to four times week, co-workers made inappropriate comments to the plaintiff, calling him "sweet booty," telling him the supervisor "wanted to mix coffee with his cream," and that the supervisor "got a big dick for [the plaintiff]." *Id.* at 5. The court of appeals held that no reasonable jury could have concluded that these comments rose to the level of a hostile and abusive work environment.

In the present case, the same result is mandated. The alleged conduct here was not frequent. It was relatively mild, albeit inappropriate (at least at times). The conduct was neither physically threatening nor notably humiliating. And it cannot be said to have interfered with

Plaintiff's work performance.  Thus, under the totality of the circumstances, Yager's conduct does not constitute sufficiently severe or pervasive conduct to present an objectively hostile work environment.  *See Eisenbaum v. Senior Lifestyle Corp.*, 560 F. App'x 496, 499 (6th Cir. 2014) (anatomical comments were not severe or pervasive but merely offensive utterances); *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 630 (6th Cir. 2013) (unwanted or unsolicited comments and physical contact were inappropriate, but did not permeate workplace with discriminatory intimidation or ridicule).

Although Plaintiff may have found the manner in which Yager allegedly interacted with her distasteful or upsetting, the alleged conduct falls outside that which Title VII is designed to prevent.  The alleged conduct may be boorish and it may fall below a general standard of civility, but it does not rise to the level of violating Title VII.  There is simply no evidence the alleged conducted interfered with Plaintiff's performing her job.  Thus, this Court reaches the same conclusion in this case that it did in another case:

> The relatively meager instances of discourtesy or rudeness involved here cannot be confused with serious harassment or discrimination premised upon racial or other impermissible grounds.  *See Faragher*, 524 U.S. at 787.  While not excusing the treatment or behavior reflected in the evidence, the Court must nonetheless recognize that the instances of asserted impropriety do not amount to discriminatory changes in the terms and conditions of [the plaintiff's] employment.  *See id.* at 788.

*Winfield v. Gates*, No. 2:09-cv-244, 2010 WL 5014497, at *5 (S.D. Ohio Dec. 3, 2010).  The Court therefore concludes that because Plaintiff cannot establish the fourth prong of her *prima facie* case for a hostile work environment sexual harassment claim, Defendants are entitled to summary judgment on these claims.

Even assuming for the sake of argument that Plaintiff can establish the fourth prong, Plaintiff's sexual harassment claims still fail on the fifth prong of employer liability.  Because Yager had no power to take a tangible employment action against Plaintiff, this Court must analyze her claim under the coworker liability standard.  *See Newton v. Ohio Dep't of Rehab. & Corr.-Toledo Corr. Inst.*, 496 F. App'x 558, 563 (6th Cir. 2012).  The Sixth Circuit has explained that under this applicable standard, a plaintiff

> must establish that [the employer] knew or should have known of the harassment yet failed to take prompt and appropriate corrective action.  *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008).  When an employer takes action to address known sexual harassment by coworkers, it can only be liable if " 'its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' "  *Id.* (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872–73 (6th Cir. 1997)).

*Wierengo*,  580 F. App'x at 371-72.  This matters because, as the Sixth Circuit has stated, "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment."  *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005).  Thus, "when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' "  *Id.  See also Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003) ("If the harasser was merely the plaintiff's co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action." (citing *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001))); *Courtney v. Landair Transp., Inc.*, 227 F.3d 559, 564-65 (6th Cir. 2000)).

MVRPM reacted appropriately to the complaints of harassment when Smith investigated each incident that Plaintiff brought to its attention and then did what Plaintiff wanted done.  The alleged 2010 incidents ceased, apparently because Plaintiff herself presented a reasonable solution: to stay away from Yager.  MVRPM later transferred Plaintiff to another location and, when issues arose there, the company facilitated an agreement between Plaintiff and Yager that Plaintiff specifically requested.  This stopped the Kingston incidents with Yager.  Plaintiff's post-agreement allegations can hardly be said to present issues demonstrating that Smith or MVRPM failed to try to remedy—and in fact, apparently remedied—the alleged sexual harassment and hostile work environment.  There is simply no inappropriate response manifesting indifference or unreasonableness by Defendants.  Plaintiff's sexual harassment/hostile work environment claims therefore fail.

### 2.   Retaliation claims

Defendants also argue that they are similarly entitled to summary judgment on Plaintiff's Count II and Count IV retaliation claims because Plaintiff again cannot establish a *prima facie* case.  Because claims under Title VII and Ohio Revised Code § 4112 involve the same standard, the Court shall also address these claims together. *Laderach*, 207 F.3d at 828.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  In order to establish a *prima facie* case of retaliation, Plaintiff must prove that

> (1) [s]he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken

against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 344 (6th Cir. 2008) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).  *See also Wierengo*, 580 F. App'x at 372.

Defendants seek summary judgment on the grounds that Plaintiff cannot satisfy multiple prongs.

Plaintiff presents indirect evidence of retaliation.  When a plaintiff offers such circumstantial evidence of retaliation, courts employ the *McDonnell Douglas* burden-shifting framework.  The Sixth Circuit has explained:

> Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation.  If the plaintiff succeeds in making out the elements of a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions.  If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendants' proffered reason was not the true reason for the employment decision.  Although the burden of production shifts between the parties, the burden of persuasion remains on the plaintiff.

*Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 582 (6th Cir. 2014) (citation omitted).

Plaintiff offers several incidents of purported retaliation, including being written up by Smith for being absent from the office without letting Smith know of the absence and other minor reprimands.  But it is well settled that a written reprimand "is not a materially adverse employment action unless it is accompanied by a loss such as demotion or salary reduction." *Agrawal v. Montemagno*, 574 F. App'x 570, 576 (6th Cir. 2014).  *See also Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013); *Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 137 (6th Cir. 2002).  Because Plaintiff has failed to present evidence of accompanying or related lowered pay, demotion, or similar consequent action, the written or oral reprimands she received cannot establish the necessary causal connection.  The transfer to Bridge Street Landing did not mean a

14

decrease in pay, a loss of benefits, a change in duties, or the imposition of a less favorable bonus plan.

Finally, Plaintiff has failed to offer evidence indicating that there is any link between her October 2012 complaints of harassment and her January 2013 transfer to Bridge Street Landing. Plaintiff points to the timing involved. But unless immediate, temporal proximity must be "coupled with other indicia of retaliatory conduct" to give rise to a causal inference. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588–89, 595 (6th Cir. 2009). The Sixth Circuit has explained, however, that its "precedent is clear that mere temporal proximity between an assertion of Title VII rights and a materially adverse action, without other indicia of retaliatory conduct, is not sufficient to establish the causal connection element of a retaliation claim." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 770 (6th Cir. 2008). Here, there is some lapse of time between the complaints and the transfer. This gap arguably does not present temporal proximity to suggest the requisite causation, and Plaintiff has failed to direct this Court to any other indicia of retaliatory conduct. Plaintiff therefore has failed to offer evidence sufficient to raise an inference that her complaints were the *likely* reason for her transfer. *See Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 627 (6th Cir. 2010) ("To demonstrate a causal connection between a materially adverse action and the exercise of protected rights, 'a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.' " (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)). There is no *prima facie* case of retaliation.

Even if this Court were to conclude that Plaintiff has presented a *prima facie* case of retaliation, however, Defendants are still entitled to summary judgment. As noted above, once a

15

plaintiff meets the initial burden of establishing a *prima facie* case of retaliation, the burden shifts to the defendant to present a legitimate, non-discriminatory reason why the plaintiff suffered an adverse employment action. *Goodsite*, 573 F. App'x at 582. In accordance with this shifting of burdens, Defendants have pointed to a non-discriminatory reason for the transfer: Plaintiff had a negative relationship with numerous Kingston residents, resulting in numerous complaints, and it was a business decision to transfer her.

Because Defendants have met the burden of production, the burden shifts to Plaintiff to demonstrate that the reason offered by the defense is pretexual. *See Goodsite*, 573 F. App'x at 582. In order to prove that Defendants' proffered reason is pretexual, Plaintiff "must demonstrate that the proffered reason was (1) factually false, (2) did not actually motivate the discharge, or (3) was insufficient to warrant the discharge." *Id.* at 584 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. In other words, Plaintiff must offer evidence that "circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* at 1084.

Plaintiff has failed to meet his burden. The evidence undercuts the argument that the proffered reason had no basis in fact, did not actually motivate the transfer, or was insufficient to warrant the transfer. For whatever reason, Plaintiff had a poor relationship with multiple Kingston residents. She had also received a negative evaluation related to the budget and for failing to supervise employees. The Kingston owner was not happy about the complaints, and

16

MVRPM made a strategic decision to resolve business issues.  Any arguable increased scrutiny that Plaintiff received can be informed by MVRPM receiving complaints, prompting that scrutiny (which largely took place following the final transfer).  Moreover, Plaintiff has failed to show that she was treated less favorably than any similarly situated co-worker after engaging in protected behavior.  A reasonably informed and considered decision based on a non-retaliatory business reason for transferring Plaintiff exists, and no reasonable juror could find pretext.  Defendants are thus also entitled to summary judgment on Plaintiff's retaliation claims.

### 3. *Title VII wrongful termination claim*

Plaintiff's claim in Count VIII is for wrongful termination, asserting a violation of "the fundamental public policies of the state of Ohio, as set forth in R.C. 4112 *et seq*[.], and of Title VII, which mandate that employees be free from sexual harassment and discrimination on the basis of their sex in the workplace, and that employees who oppose such conduct be free from retaliation, intimidation and adverse employment actions."  (ECF No. 5 ¶ 87.)  Part of this claim in unquestionably a state law claim.  But the complaint, and especially Plaintiff's memorandum in opposition, suggests that Plaintiff has bundled a state law wrongful termination claim and a Title VII wrongful termination claim into one count.  Conflating two distinct claims for relief like this is contrary to how Plaintiff pled other similar claims such as the state law claims in Counts I and II compared to the federal claims in Counts  III and IV.

Assuming that Plaintiff has effectively pled a federal component in the wrongful termination count, Defendants are also entitled to summary judgment on that federal claim.  The failure of a Title VII sexual harassment claim means that a plaintiff cannot sustain a related Title

17

VII wrongful termination claim.  *See Young v. Sabbatine*, 238 F.3d 426, 2000 WL 1888672, at

*4 (6th Cir. 2000) (unpublished table decision).

Additionally, even accepting Plaintiff's version of the facts, no reasonable juror could

conclude that the complained-of conduct constituted working conditions that were so intolerable

that Plaintiff was constructively discharged.  The Sixth Circuit has explained that "[t]o constitute

a constructive discharge, the employer must deliberately create intolerable working conditions,

as perceived by a reasonable person, with the intention of forcing the employee to quit and the

employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073,

1080 (6th Cir. 1999).  Although an employee can be considered constructively discharged when

she reasonably believed her termination was imminent, *Ford v. Gen. Motors Corp.*, 305 F.3d

545, 554 (6th Cir. 2002), no reasonable person in Plaintiff's position could have believed based

on the evidence before this Court that her termination was necessarily imminent at the time

Plaintiff resigned.

Perhaps even more notable, Plaintiff has failed to offer evidence from which a reasonable

jury could conclude that there was the intent to compel her to quit.  This is important because, as

the Sixth Circuit has explained, courts must also examine the employer's intent in constructive

discharge cases.  *Moore*, 171 F.3d at 1080; *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir.

1987).  Such "[i]ntent can be shown by demonstrating that quitting was a foreseeable

consequence of the employer's actions." *Moore*, 171 F.3d at 1080.  But, as the court of appeals

has emphasized, "[t]he plaintiff must show more than a Title VII violation to prove constructive

discharge, so the fact that plaintiff may have proven a hostile work environment is not enough by

itself to prove constructive discharge also." *Id.*  As explained above, Plaintiff has failed even to

18

create an issue of fact as to whether a hostile work environment existed in violation of Title VII. The evidence upon which she relies simply does not show that Defendants created or permitted the circumstances of her employment to exist with the intention of forcing her to quit.

Based on the foregoing, the Court concludes that, even when viewing all of the evidence in the light most favorable to Plaintiff, she has also failed to raise a genuine issue of material fact as to whether she was constructively discharged under Title VII. No reasonable juror considering her evidence could conclude that a reasonable person in Plaintiff's position would have felt compelled to end employment because of her working conditions.

### 4. *Remaining state law claims*

Plaintiff asserts additional state law claims against Defendants for intentional infliction of emotional distress (Count V), negligent supervision (Count VI), defamation (Count VII), and wrongful termination in violation of Ohio public policy (Count VIII). In light of the failure of Plaintiff's federal claims, this Court should presumptively not address these remaining state law claims. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that " [w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial...the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is

19

for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

Here, Plaintiff has failed to assert any justification or alternative basis for exercising jurisdiction over the remaining state law claims should the federal claims fail.  The extant question is therefore whether a dismissal without prejudice or a remand of the state law claims is warranted.

The Sixth Circuit has explained that " '[w]hether to remand or dismiss is a matter normally left to the discretion of the district court.' "  *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C.Cir. 1995)).  In considering the alternatives, the Court recognizes that Plaintiff originally sought to pursue her claims in state court.  Having weighed this factor, as well as the relevant considerations involving judicial economy, convenience, fairness to the parties, and comity, this Court in its discretion both declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims, *see* 28 U.S.C. § 1367(c)(3) and (4), and remands these claims to the state court.  *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("In cases that have been removed to federal court . . . we have recognized that 'when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed.' " (quoting *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004))).  The Court emphasizes that it expresses no opinion as to the merits of the remanded state law claims.

20

### III. Conclusion

The Court **GRANTS** Defendants' motion for summary judgment in regard to Counts I, II, III and IV, as well as the federal component of Count VIII.  (ECF No. 44.)  This Court declines to exercise supplemental jurisdiction over Counts V, VI, and VII, as well as the state law component of Count VIII, all of which the Court **REMANDS** to the Pickaway County Common Pleas Court.  The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　/s/ Gregory L. Frost
　　　　　　　　　　　　　　　　　　GREGORY L. FROST
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE